## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| AUTO INJECTION TECHNOLOGIES LLC, | § § § | Case No. |
| | § | **JURY TRIAL DEMANDED** |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| MEDTRONIC PLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Auto Injection Technologies LLC ("AIT" or "Plaintiff") for its Complaint against Defendant Medtronic plc ("Medtronic" or "Defendant") for patent infringement, alleges as follows:

### THE PARTIES

1.      AIT is organized and existing under the laws of the State of Texas, with its principal place of business located at 104 East Houston Street, Suite 140, Marshall, Texas 75670.

2.      Defendant Medtronic plc, is a corporation duly organized and existing under the laws of the Ireland, with a place of business located at Building 2 Parkmore Business Park West, Galway, Ireland and may be served pursuant to the provisions of the Hague Convention.

### JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 1367.

4.      This Court has specific and personal jurisdiction over the Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute.  Upon information and belief, the Defendant has sufficient minimum contacts with this forum because Defendant transacts substantial business in the State of Texas and in this Judicial District.  Further, the Defendant has, directly or through intermediaries, committed and continues to commit acts of patent infringement in the State of Texas, and places its products and/or services, including those accused herein of infringement, into the stream of commerce which terminates in the Judicial District of the Eastern District of Texas, as alleged more particularly below.  For example, on information and belief, the Accused Products are available for purchase in this Judicial District.

5.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c) because the Defendant is a foreign company that may be sued in any Judicial District, including the Eastern District of Texas.  The Defendant is subject to personal jurisdiction in this Judicial District and has committed acts of patent infringement in this Judicial District.  On information and belief, the Defendant through its own acts and/or through the acts intermediaries, makes, uses, sells, and/or offers to sell infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with the Judicial District, such that this venue is a fair and reasonable one.

## PATENTS-IN-SUIT

6.      On September 22, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,780,231 (the "'231 Patent") entitled "Drive Mechanism for a Drug Delivery Device and Drug Delivery Device."  A true and correct copy of the '231 Patent is available                                                                                           at

https://patentimages.storage.googleapis.com/a0/1d/72/8b6795b895de62/US10780231.pdf.

7.    On March 22, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,289,560 (the "'560 Patent") entitled "Drive Assembly for a Drug Delivery Device and Drug Delivery Device."  A true and correct copy of the '560 Patent is available at https://patentimages.storage.googleapis.com/87/07/f4/0bae2f6a7d01b9/US9289560B2.pdf.

8.    On November 19, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,585,656 (the "'656 Patent") entitled "Dose Setting Mechanism for Priming a Drug Delivery Device."  A true and correct copy of the '656 Patent is available at https://patentimages.storage.googleapis.com/ec/11/b7/e7ec1410563e94/US8585656.pdf.

9.    On July 12, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,387,294 (the "'294 Patent") entitled "Drug Delivery Device."  A true and correct copy of the '294 Patent is available at https://patentimages.storage.googleapis.com/48/73/58/11d611c12601a9/US9387294.pdf.

10.    On February 12, 2019, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,201,662 (the "'662 Patent") entitled "Injection Device and Assembly Method."  A true and correct copy of the '662 Patent is available at https://patentimages.storage.googleapis.com/15/87/c6/55ceabb952fb25/US10201662.pdf.

11.    On October 5, 2021, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,135,376 (the "'376 Patent") entitled "Dosing Mechanism for Multi-Shot Injection Device Comprising Flexible Ratchet Element."  A true and correct copy of the '367 Patent is available at https://patentimages.storage.googleapis.com/af/d5/5b/6bff548d11c640/US11135376.pdf.

12.    On October 4, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,457,150 (the "'150 Patent") entitled "Biasing Mechanism for a Drug Delivery Device."  A true and correct copy of the '150 Patent is available at https://patentimages.storage.googleapis.com/b2/a5/fb/946d9699345d32/US9457150.pdf.

13.    AIT is the sole and exclusive owner of all right, title, and interest in the '231 Patent, the '560 Patent, the '656 Patent, the '294 Patent, the '662 Patent, the '376 Patent, and the '150 Patent (collectively, the "Patents-in-Suit" or "Asserted Patents") and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit.  AIT also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

## FACTUAL ALLEGATIONS

14.    The Patents-in-Suit are generally directed at systems for medicinal dosing, dispensing, and delivery.

15.    The '231 Patent relates to drug delivery devices and their drive mechanisms.  The '231 Patent is directed at technology that provides feedback, via the drive mechanism, to the user of the drug delivery device.  This feedback aids the user in a variety of ways.  This technology was invented by Stephen David Butler and Mark Philip Horlock while they were employed at Sanofi-Aventis Deutschland GmbH.

16.    The '560 Patent relates to drug delivery devices and their drive assemblies.  The '560 Patent is directed at technology that increases the stability of the drive assembly, allowing for

more precise delivery.  This technology was invented by Steffan Raab and Uwe Dasbach while employed at what is now Sanofi-Aventis Deutschland GmbH.

17.     The '656 Patent relates to dose setting mechanisms for a drug delivery device.  The '656 Patent is directed at technology to improve the accuracy of the amount of dose dispensed from the drug delivery device.  This technology was invented by David Aubrey Plumptre, Christopher John Jones, and Robert Frederick Veasey while employed at what is now Sanofi-Aventis Deutschland GmbH.

18.     The '294 Patent generally relates to a drug dosage delivery device which has a reliable dosage setting a dispensing mechanism.  To accomplish this, the device employs a piston rod and a drive member.  The two work in tandem to allow specific dosages to be set, and then allows for dispensing consistent with that set dosage.  This technology invented by David Plumptre, Andrew Mark Lindsay, Catherine Anne MacDonald, Robert Veasey, Garen Kouyoumjian, and Christopher Jones while they were employed at what is now Sanofi-Aventis Deutschland GmbH.

19.     The '662 Patent relates to hand-held injection devices and their injection efficacy. This technology was invented by Anthony Paul Morris, William Marsh, Matthew Jones, Joseph Butler, David Aubrey Plumptre, and Robert Veasey while they were employed at what is now Sanofi-Aventis Deutschland GmbH.

20.     The '376 Patent relates to dose controlled multi-shot injection devices.  The '367 Patent is directed at a number of improvements in terms of ease of use and efficacy of delivery for

the multi-shot injection device.  This technology invented by Markus Ploch while he was employed at what is now Sanofi-Aventis Deutschland GmbH.

21.     The '150 Patent relates to drug delivery devices, particularly, the '150 Patent biasing cartridges within the drug delivery device.  This technology was invented by David Aubrey Plumptre while he was employed at what is now Sanofi-Aventis Deutschland GmbH.

22.     Upon information and belief, Defendant has had knowledge and notice of the Patents-in-Suit, and its infringement thereof, since they issued.  Defendant was a direct competitor to Sanofi-Aventis Deutschland GmbH and, upon information and belief, monitored or was otherwise aware of its patented inventions, due to Sanofi-Aventis Deutschland GmbH's impact on Defendant's market position.  Alternatively, to the extent that Defendant avoided actual knowledge of the Patents-in-Suit, and its infringement thereof, it was willfully blind.  Upon information and belief, to the extent it lacked actual knowledge of infringement, Defendant deliberately avoided learning of infringement despite subjectively believing that there was a high probability that it infringed Sanofi-Aventis Deutschland GmbH patents, and specifically the Patents-in-Suit.  Upon information and belief, Defendant has adopted a policy or practice of not reviewing the patents of others, including those related to Defendant's specific industry and Sanofi-Aventis Deutschland GmbH in particular, thereby remaining willfully blind to the Patents-in-Suit.  Upon information and belief, Defendant lacks written policies disseminated to employees regarding monitoring or avoidance of patent infringement by Defendant and lacks mechanisms for employees to report patents which they believe Defendant may infringe.  Upon information and belief, Defendant and its employees understood that there was a high likelihood that patents filed on innovations by Sanofi-Aventis Deutschland GmbH read on the Accused Products based on their widely publicized

R&D programs and competitor status.

23.     Defendant has infringed and continues to infringe one or more of the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or import medicament injection devices (the "Accused Products").  For example, the Medtronic "InPen."

24.     For example, Defendant discloses a "Diabetes Operating Unit" in its fiscal report, and refers to the products created by that unit as "our Diabetes products."

> ***Diabetes Operating Unit***   The Diabetes Operating Unit develops, manufactures, and markets products and services for the management of Type 1 and Type 2 diabetes. The primary medical specialists who use and/or prescribe our Diabetes products are endocrinologists and primary care physicians. [1]

25.     For example, Defendant tracks the sales of its diabetes products in the United States of America, at least on a yearly basis.

| (in millions) | U.S.[1] | | | Non-U.S. Developed Markets[2] | | | Emerging Markets[3] | | |
|---|---|---|---|---|---|---|---|---|---|
| | Fiscal Year 2024 | Fiscal Year 2023 | % Change | Fiscal Year 2024 | Fiscal Year 2023 | % Change | Fiscal Year 2024 | Fiscal Year 2023 | % Change |
| Cardiovascular | $ 5,597 | $ 5,796 | (3)% | $ 3,857 | $ 3,564 | 8 % | $ 2,377 | $ 2,161 | 10 % |
| Neuroscience | 6,305 | 6,018 | 5 | 1,739 | 1,658 | 5 | 1,362 | 1,283 | 6 |
| Medical Surgical | 3,717 | 3,549 | 5 | 3,049 | 2,917 | 5 | 1,650 | 1,522 | 8 |
| Diabetes | 852 | 849 | — | 1,284 | 1,106 | 16 | 352 | 307 | 15 |
| Reportable segment turnover | 16,471 | 16,212 | 2 | 9,929 | 9,245 | 7 | 5,742 | 5,273 | 9 |
| Other operating segment [4] | 91 | 160 | (43) | 50 | 163 | (69) | 81 | 172 | (53) |
| Total | $ 16,562 | $ 16,373 | 1 % | $ 9,979 | $ 9,408 | 6 % | $ 5,823 | $ 5,446 | 7 % [2] |

26.     For example, Defendant states on its website that Defendant received FDA approval for "its new InPen."

> GALWAY, Ireland, Nov. 20, 2024 /PRNewswire/ - Medtronic plc (NYSE: MDT), a global leader in healthcare technology, today announced U.S. Food and Drug Administration (FDA) clearance for its new InPen™ app featuring missed meal dose detection, paving the way for the launch of its Smart MDI system with the Simplera™ continuous glucose monitor (CGM). The company's Smart MDI system combines its InPen™ smart insulin pen with its newest Simplera™ CGM – the company's first disposable, all-in-one CGM that's half the size of previous Medtronic CGMs. [3]

---

[1] https://filecache.investorroom.com/mr5ir_medtronic/775/FY24%20Annual%20Irish%20Report.pdf

[2] https://filecache.investorroom.com/mr5ir_medtronic/775/FY24%20Annual%20Irish%20Report.pdf

[3] https://news.medtronic.com/2024-11-20-Medtronic-receives-FDA-clearance-for-new-InPen-TM-app,-paving-the-way-for-its-Smart-MDI-system-launch-with-Simplera-TM-CGM

## COUNT I
### (Infringement of the '231 Patent)

27.     Paragraphs 1 through 26 are incorporated by reference as if fully set forth herein.

28.     AIT has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '231 Patent.

29.     Defendant infringes, contributes to the infringement of, and/or induces infringement of the '231 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '231 Patent including, but not limited to, at least the Accused Products.

30.     Defendant has directly infringed and continues to directly infringe the '231 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '231 Patent.  Upon information and belief, the Accused Products practice the methods and systems covered by the '231 Patent.

31.     For example, Defendant has and continues to directly infringe at least claim 1 of the '231 Patent by making, using, offering to sell, selling, and/or importing into the United States products which comprise a drive mechanism for a drug delivery device, comprising: a housing having a longitudinal axis, a first feedback element which is movable along the longitudinal axis relative to the housing, the first feedback element comprising a helical structure, and a second feedback element, wherein the first feedback element and the second feedback element are adapted to interact with each other, thereby providing at least one of tactile and audible feedback during a dose setting operation of the drive mechanism, wherein the first feedback element comprises a first surface configured to interact with the second feedback element during a dose setting operation of the drive mechanism, wherein the first surface comprises first protrusions, the first feedback

8

element comprises a second surface comprising second protrusions, wherein the first and second protrusions are arranged opposite one another to result in an audible or tactile feedback when interacting with the second feedback element, and wherein the second protrusions are configured to interact with the second feedback element during at least one of the dose setting and a dose dispensing operation of the drive mechanism.

32.    The Accused Products comprise a drive mechanism for a drug delivery device, comprising: a housing having a longitudinal axis.  For example, the InPen comprises a drive mechanism to inject the patient with insulin.  The housing of the InPen has a longitudinal axis, as shown below.



https://www.medtronicdiabetes.com/products/inpen-smart-insulin-pen-system,
Last Accessed on March 7, 2025

33.    The Accused Products comprise a first feedback element which is movable along
the longitudinal axis relative to the housing, the first feedback element comprising a helical
structure.  For example, the InPen has a first feedback element which has a dialing clicker ratchet,
as shown in the first image below.  Furthermore, the first feedback element has a helical structure

which is movable along the longitudinal axis relative to the housing, as shown in the second image below.



Teardown Images for the InPen



https://www.youtube.com/watch?v=4yTwnI0klRQ at 1:49, Last Accessed March 15, 2025

34.    The Accused Products comprise a drive mechanism which comprises a second feedback element.  For example, the InPen's drive mechanism contains a second feedback element, as shown below.



Teardown Images for the InPen

35.    The Accused Products comprise a drive mechanism wherein the first feedback element and the second feedback element are adapted to interact with each other, thereby providing at least one of tactile and audible feedback during a dose setting operation of the drive mechanism. For example, the InPen's first feedback element and second feedback interact with each other as shown below in the first image.  This produces audible "clicks" during the dose setting operation. The does setting operation is illustrated in the second and third images below.



Teardown Images for the InPen



Source: https://www.youtube.com/watch?v=4yTwnI0klRQ, Time: 1:49-1:54,
Last Accessed on March 07, 2025

36.    The Accused Products comprise a drive mechanism wherein the first feedback element comprises a first surface configured to interact with the second feedback element during a dose setting operation of the drive mechanism, wherein the first surface comprises first protrusions, the first feedback element comprises a second surface comprising second protrusions, wherein the first and second protrusions are arranged opposite one another to result in an audible or tactile feedback when interacting with the second feedback element.  For example, the InPen's first feedback element has both a first and second surface with protrusions arranged opposite to one another, as shown below.  When interacting with the second feedback element to set or dispense a dose, the two feedback elements create a clicking sound.



Teardown Images for the InPen



First feedback element with first protrusions

First and second protrusions are arranged opposite to each other

First feedback element includes a second surface featuring second protrusions

Teardown Images for the InPen



Second feedback element (i.e., white ring).

Teardown Images for the InPen



Source: https://www.youtube.com/watch?v=4yTwnI0klRQ, Time: 1:49-1:54,
Last Accessed on March 07, 2025

37.    The Accused Products comprise a drive mechanism wherein the second protrusions are configured to interact with the second feedback element during at least one of the dose setting and a dose dispensing operation of the drive mechanism.  For example, the InPen's second protrusions of the first feedback element interact with the second feedback element when setting or dispensing a dose.



Teardown Images for the InPen

38.    Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '231 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement by others, such as Defendant's customers and end-users, in this District and elsewhere in the United States.  For example, Defendant's customers and end-users directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Accused Products.  Defendant induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products,

and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation.  Because of Defendant's inducement, Defendant's customers and end-users use the Accused Products in a way Defendant intends and they directly infringe the '231 Patent.  Defendant performs these affirmative acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '231 Patent, but while remaining willfully blind to the infringement.

39.    Defendant ha indirectly infringed and continues to indirectly infringe one or more claims of the '231 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '231 Patent is directly infringed by others.  The accused components within the Accused Products are material to the invention of the '231 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '231 Patent.  Defendant performs these affirmative acts with knowledge of the '231 Patent and with intent, or willful blindness, that they cause the direct infringement of the '231 Patent.

40.    AIT is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '231 Patent.

41.     AIT has suffered damages as a result of Defendant's direct and indirect infringement of the '231 Patent in an amount to be proved at trial.

42.     AIT has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '231 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

### COUNT II
### (Infringement of the '560 Patent)

43.     Paragraphs 1 through 26 are incorporated by reference as if fully set forth herein.

44.     AIT has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '560 Patent.

45.     Defendant infringes, contributes to the infringement of, and/or induces infringement of the '560 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '560 Patent including, but not limited to, at least the Accused Products.

46.     Defendant has directly infringed and continues to directly infringe the '560 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '560 Patent.  Upon information and belief, these products include the Accused Products that practices the systems and/or methods covered by the '560 Patent.

47.     For example, Defendant has and continues to directly infringe at least claim 1 of the '560 Patent by making, using, offering to sell, selling, and/or importing into the United States products that a drive assembly for a drug delivery device, comprising: a housing with a proximal end and a distal end, and a longitudinal axis (A) extending between the proximal end and the distal

end, a rotation sleeve being rotatable relative to the housing, a drive member is axially moveable relative to the housing, and a piston rod being axially moveable relative to the housing, wherein the piston rod is in mechanical cooperation with the rotation sleeve to be moveable in the distal direction relative to the housing when the rotation sleeve rotates in a first direction (D1) and to be stationary in axial direction relative to the housing when the rotation sleeve rotates in a second direction (D2) opposite to the first direction (D1), wherein the rotation sleeve is in mechanical cooperation with the drive member to be rotatable relative to the housing when the drive member is displaced in the axial direction relative to the rotation sleeve.  The Accused Products are injection devices.  For example, the InPen is an injection device.

48.    The Accused Products comprise a drive assembly for a drug delivery device, comprising: a housing with a proximal end and a distal end, and a longitudinal axis (A) extending between the proximal end and the distal end.  For example, the InPen is designed to deliver insulin (a drug delivery device), with a drive assembly as shown in the first picture below.  It has a housing at the proximal and distal end and has a longitudinal axis extending between the proximal and distal ends, as shown in the second picture below.



Source: https://www.youtube.com/watch?v=4yTwnI0klRQ, Time: 1:49,
Last Accessed on Feb 02, 2025



https://www.medtronicdiabetes.com/products/inpen-smart-insulin-pen-system,
Last Accessed on February 02, 2025

49.    The Accused Products comprise a rotation sleeve being rotatable relative to the housing, and a drive assembly, which comprises a drive member is axially moveable relative to the housing.  For example, InPen's rotation sleeve rotates when the drive member moves axially relative to the housing, demonstrated in the two pictures below.





https://www.youtube.com/watch?v=4yTwnI0klRQ, Time: 1:49-1:54,
Last Accessed on Feb 02, 2025

50.    The Accused Products comprise a drive assembly, which comprises a piston rod being axially moveable relative to the housing.  For example, the InPen's piston rod moves axially relative the housing as demonstrated below.



Source: https://www.medtronicdiabetes.com/sites/default/files/library/download-library/user-guides/InPen-user-guide.pdf, Page 47, Last Accessed on Feb 2, 2025

21

51.    The Accused Products comprise a piston rod, wherein the piston rod is in mechanical cooperation with the rotation sleeve to be moveable in the distal direction relative to the housing when the rotation sleeve rotates in a first direction (D1) and to be stationary in axial direction relative to the housing when the rotation sleeve rotates in a second direction (D2) opposite to the first direction (D1).  For example, the InPen achieves priming by rotating the rotational sleeve in a first direction causing the piston rod to move axially, thereby engaging mechanically with the rotation sleeve, as demonstrated in the pictures outlined in yellow below. After priming, the user rotates the rotation sleeve in the opposite direction to set the desired dose, and the piston rod remains stationary as it stays in contact with the cartridge.

## Priming moves the screw into contact with the cartridge plunger and gets the air out of the cartridge.  When you are priming the InPen:

https://www.medtronicdiabetes.com/sites/default/files/library/download-library/user-guides/InPen-user-guide.pdf, Page 42, Last Accessed on Feb 02, 2025



https://www.youtube.com/watch?v=MWq1qpvnYAs , Time: 0:01,
Last Accessed on Feb 02, 2025



https://www.youtube.com/watch?v=4TU5OBrpPP4 ,Time: 0:53, Last Accessed on Feb 2, 2025

## 13. Selecting Your Dose

1. Select your dose by turning the dose knob until the desired dose is lined up with the dose indicator. Half units are shown as lines between the numbers.



https://www.medtronicdiabetes.com/sites/default/files/library/download-library/user-guides/InPen-user-guide.pdf, Page 43, Last Accessed on Feb 02, 2025

52.    The Accused Products comprise a rotation sleeve, wherein the rotation sleeve is in mechanical cooperation with the drive member to be rotatable relative to the housing when the drive member is displaced in axial direction relative to the rotation sleeve.  For example, the InPen when the drive member is pushed or pressed axially, the rotational sleeve rotates, mechanically cooperating with the drive member.



Source: https://www.youtube.com/watch?v=4yTwnI0klRQ , Time: 1:49-1:54,
Last Accessed on Feb 02, 2025

23

53.    Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '560 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement by others, such as Defendant's customers and end-users, in this District and elsewhere in the United States.  For example, Defendant's customers and end-users directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Accused Product.  Defendant induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation.  Because of Defendant's inducement, Defendant's customers and end-users use the Accused Products in a way Defendant intends and they directly infringe the '560 Patent.  Defendant performs these affirmative acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '560 Patent, but while remaining willfully blind to the infringement.

54.    Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '560 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '560 Patent is directly infringed by others.  The accused components within the Accused

Product are material to the invention of the '560 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '560 Patent.  Defendant performs these affirmative acts with knowledge of the '560 Patent and with intent, or willful blindness, that they cause the direct infringement of the '560 Patent.

55.     AIT is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '560 Patent.

56.     AIT has suffered damages as a result of Defendant's direct and indirect infringement of the '560 Patent in an amount to be proved at trial.

57.     AIT has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '560 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT III
### (Infringement of the '656 Patent)

58.     Paragraphs 1 through 26 are incorporated by reference as if fully set forth herein.

59.     AIT has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '656 Patent.

60.     Defendant infringes, contributes to the infringement of, and/or induces infringement of the '656 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '656 Patent including, but not limited to, at least the Accused Product.

61.     Defendant has directly infringed and continues to directly infringe the '656 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C.

§ 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '656 Patent.  Upon information and belief, the Accused Products practice the systems and/or methods covered by the '656 Patent.

62.    For example, Defendant has and continues to directly infringe at least claim 1 of the '656 Patent by making, using, offering to sell, selling, and/or importing into the United States products which comprise a dose setting mechanism for a drug delivery device comprising: a dial sleeve; and an internal housing portion having; an outer surface comprising; a helical path, wherein the dial sleeve surrounds and is coupled to the internal housing portion, wherein the internal housing; portion is configured to allow the dial sleeve to rotate along a substantially rotational path during priming of the drug delivery device, and wherein the dial sleeve translates along the a helical path during dose setting of the drug delivery device; the outer surface of the internal housing comprises a threaded portion, and wherein the threaded portion comprises a rotational threaded portion and a helical threaded portion; and the dial sleeve rotates on the rotational threaded portion during priming of the drug delivery device, and wherein the dial sleeve translates along the helical threaded portion during dose setting of the drug delivery device.

63.    The Accused Products comprise a dose setting mechanism for a drug delivery device comprising: a dial sleeve; and an internal housing portion having an outer surface comprising a helical path.  For example, the InPen comprises a dose setting mechanism to deliver insulin.  The dose setting mechanism comprises a dial sleeve, and internal housing portion which has an outer surface comprising a helical path, as shown below.



https://www.medtronicdiabetes.com/products/inpen-smart-insulin-pen-system,
Last Accessed on September 23, 2022



https://www.youtube.com/watch?v=4yTwnI0klRQ, Time: 1:49,
Last Accessed on September 23, 2022

64.    The Accused Products comprise a dial sleeve, wherein the dial sleeve surrounds

and is coupled to the internal housing portion.  For example, the InPen has a dial sleeve which

surrounds and is coped to the internal housing portion, as shown below.



https://www.youtube.com/watch?v=4yTwnI0klRQ, Time: 1:49,
Last Accessed on September 23, 2022

65.    The Accused Products comprise internal housing, wherein the internal housing; portion is configured to allow the dial sleeve to rotate along a substantially rotational path during priming of the drug delivery device.  For example, the InPen must be primed before use.  During the priming process, the dose knob is "dialed" to the priming dosage, as shown below.

**What is priming?**

Priming before you dose removes the air from the needle and cartridge that may collect during normal use. This ensures that you get your full dose. It's important to prime before every injection when using any insulin pen.

https://www.medtronicdiabetes.com/customer-support/inpen-system-support/how-to-prime, Page 1,
Last Accessed on September 23, 2022

**How to prime your InPen (before every injection)**

If you don't prime before each injection, your dose might be lower than you intended.

1. Remove the paper tab from the needle
2. Screw the needle onto the cartridge holder
3. Pull off the outer cap and the inner cap
4. Discard the inner cap
5. Keep the outer cap to remove the needle after your injection
6. Dial the Dose Knob to select 2 units
7. Hold the InPen so the needle is pointing up and tap cartridge to collect any air at the top
8. Prime the InPen by pushing the injection button with your thumb. *You should see a few drops of insulin.*
9. If no insulin is seen, repeat priming according to steps 6 through 8. A new cartridge may need to be primed several times.

https://www.medtronicdiabetes.com/customer-support/inpen-system-support/how-to-prime, Page 1,
Last Accessed on September 23, 2022

66.    The Accused Products comprise a dial sleeve, wherein the dial sleeve translates along a helical path during dose setting of the drug delivery device.  For example, when the InPen is dose setting, the dose knob of the InPen selects the proper dosage.  During this process, the dose knob is rotated along a helical path, and thus the dial sleeve travels along this path as well.



https://www.youtube.com/watch?v=4TU5OBrpPP4 ,Time: 0:51,
Last Accessed on September 23, 2022



https://www.youtube.com/watch?v=4TU5OBrpPP4 ,Time: 0:53,
Last Accessed on September 23, 2022

67.    The Accused Products comprise an outer surface, where the outer surface of the

internal housing comprises a threaded portion, and wherein the threaded portion comprises a

rotational threaded portion and a helical threaded portion.  For example, the InPen's knob's outer

surface comprises a threaded portion wherein the threaded portion comprises a rotational threaded

portion and a helical threaded portion, as shown below.



https://www.youtube.com/watch?v=4yTwnI0klRQ, Time: 1:49,
Last Accessed on September 23, 2022

68.    The Accused Products comprise a dial sleeve, where the dial sleeve rotates on the rotational threaded portion during priming of the drug delivery device, and wherein the dial sleeve translates along the helical threaded portion during dose setting of the drug delivery device.  For example, the InPen's priming process involves rotating the dose knob to select the priming dosage, and then pushing the dose knob to complete the process.  The dial sleeve rotates along the threaded portion relative to the dose knob, while setting the dose to the desired dosage, as well as when pushing the knob to perform priming.  This is illustrated in blue below.  During dose setting, the InPen's dose knob is turned to the recommended dose by lining it up with the indicator.  The dose knob is rotated along a helical path, as is the dial sleeve, during doses setting, as shown below in red.



https://www.youtube.com/watch?v=MWq1qpvnYAs , Time: 0:01,
Last Accessed on September 23, 2022



https://www.youtube.com/watch?v=MWq1qpvnYAs , Time: 0:02,
Last Accessed on September 23, 2022

## Step 4: Select your dose

Select your dose by turning the dose knob until the recommended dose is lined up with the dose indicator. Half units are shown as lines between the numbers. You cannot select a dose larger than 30 units. If you need more than 30 units, you must divide your dose into two injections.

https://www.medtronicdiabetes.com/customer-support/inpen-system-support/how-to-dose-with-inpen,
Page 1,
Last Accessed on September 27, 2022



https://www.youtube.com/watch?v=4TU5OBrpPP4 ,Time: 0:51,
Last Accessed on September 23, 2022



https://www.youtube.com/watch?v=4TU5OBrpPP4 ,Time: 0:53,
Last Accessed on September 23, 2022

69.     Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '656 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement by others, such as Defendant's customers and end-users, in this District and elsewhere in the United States.  For example, Defendant's customers and end-users directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Accused Products.  Defendant induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation.  Because of Defendant's inducement, Defendant's customers and end-users use the Accused Products in a way

Defendant intends and they directly infringe the '656 Patent.  Defendant performs these affirmative acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '656 Patent, but while remaining willfully blind to the infringement.

70.    Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '656 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '656 Patent is directly infringed by others.  The accused components within the Accused Products are material to the invention of the '656 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '656 Patent.  Defendant performs these affirmative acts with knowledge of the '656 Patent and with intent, or willful blindness, that they cause the direct infringement of the '656 Patent.

71.    AIT is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '656 Patent.

72.    AIT has suffered damages as a result of Defendant's direct and indirect infringement of the '656 Patent in an amount to be proved at trial.

73.    AIT has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '656 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

### COUNT IV
### (Infringement of the '294 Patent)

74.    Paragraphs 1 through 26 are incorporated by reference as if fully set forth herein.

75.    AIT has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '294 Patent.

76.    Defendant infringes, contributes to the infringement of, and/or induces infringement of the '294 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '294 Patent including, but not limited to, at least the Accused Products.

77.    Defendant has directly infringed and continues to directly infringe the '294 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '294 Patent.  Upon information and belief, the Accused Products practices the systems and/or methods covered by the '294 Patent.

78.    For example, Defendant has and continues to directly infringe at least claim 3 of the '294 Patent by making, using, offering to sell, selling, and/or importing into the United States products which comprise a drug delivery device for dispensing one or more doses of a drug, the drug delivery device having a longitudinal axis and being configured to dispense a dose of a drug in a dose dispense operation, as well as being configured to be prepared for a subsequent dose dispense operation in a dose set operation, the device comprising: a drive member for driving a piston rod in a dispense operation and a dose member for actuating the drive member, wherein the

dose member is constrained to an axial movement along the longitudinal axis, wherein the drive member has stable and unstable states relative to the longitudinal axis, and wherein in an unstable state the drive member is biased by biasing means towards a stable state.

79.    The Accused Products comprise a drug delivery device for dispensing one or more doses of a drug, the drug delivery device having a longitudinal axis and being configured to dispense a dose of a drug in a dose dispense operation, as well as being configured to be prepared for a subsequent dose dispense operation in a dose set operation.  For example, the InPen is a drug delivery device that is used to deliver insulin.  It has a longitudinal axis, as shown below in yellow. The InPen must be configured to dispense a dose of insulin, i.e. ,it must be primed.  The InPen first dispenses the priming dose, then is prepared to be used to dispense insulin to the user.

## Safety Information

The InPen is a reusable insulin pen for people living with diabetes. It can be used to deliver insulin, help calculate insulin doses, and estimate carbohydrates for meals. Those under the age of 7 should only use the device with an adult's supervision. A healthcare provider must prescribe InPen, provide dosage settings, and discuss all potential benefits and risks. Using the device with incorrect therapy settings may lead to severe highs and lows. The InPen should not be used by those unable to test blood glucose levels or the visually impaired. For additional product and important safety information, click here.

https://www.medtronicdiabetes.com/products/inpen-smart-insulin-pen-system,
Last Accessed on September 23, 2022



https://www.medtronicdiabetes.com/products/inpen-smart-insulin-pen-system,
Last Accessed on September 23, 2022

**What is priming?**

Priming before you dose removes the air from the needle and cartridge that may collect during normal use. This ensures that you get your full dose. It's important to prime before every injection when using any insulin pen.

https://www.medtronicdiabetes.com/customer-support/inpen-system-support/how-to-prime, Page 1,
Last Accessed on September 23, 2022

## How to prime your InPen (before every injection)

If you don't prime before each injection, your dose might be lower than you intended.

1. Remove the paper tab from the needle

2. Screw the needle onto the cartridge holder

3. Pull off the outer cap and the inner cap

4. Discard the inner cap

5. Keep the outer cap to remove the needle after your injection

6. Dial the Dose Knob to select 2 units

7. Hold the InPen so the needle is pointing up and tap cartridge to collect any air at the top

8. Prime the InPen by pushing the injection button with your thumb. *You should see a few drops of insulin.*

9. If no insulin is seen, repeat priming according to steps 6 through 8. A new cartridge may need to be primed several times.

https://www.medtronicdiabetes.com/customer-support/inpen-system-support/how-to-prime, Page 1, Last Accessed on September 23, 2022



https://www.youtube.com/watch?v=MWq1qpvnYAs , Time: 0:01, Last Accessed on September 23, 2022



https://www.youtube.com/watch?v=4TU5OBrpPP4 ,Time: 0:53,
Last Accessed on September 23, 2022

80.    The Accused Products comprise a drive member for driving a piston rod in a dispense operation.  For example, the InPen has a drive member, which is used to drive a piston rod to dispense insulin, as shown below.



Source: https://www.medtronicdiabetes.com/sites/default/files/library/download-library/user-guides/InPen-user-guide.pdf,
Page 47, Last Accessed on Sept 26, 2022



Source: https://www.youtube.com/watch?v=4yTwnI0klRQ, Time: 1:49,
Last Accessed on Sept 26, 2022

81.    The Accused Products comprise a dose member for actuating the drive member,

wherein the dose member is constrained to an axial movement along the longitudinal axis.  For

example, the InPen's dose member, the dose knob, is constrained to axial movement as shown

below.



Source: https://www.youtube.com/watch?v=4TU5OBrpPP4 ,Time: 0:51,
Last Accessed on September 23, 2022



Source: https://www.youtube.com/watch?v=4TU5OBrpPP4 ,Time: 0:53,
Last Accessed on September 23, 2022

82.    The Accused Products comprise a drive member wherein the drive member has stable and unstable states relative to the longitudinal axis and wherein in an unstable state the drive member is biased by biasing means towards a stable state.  For example, the InPen provides doses from 0.5 to 30 units in 0.5 increments.  If a user tries to set it to an unstable state, for example 0.6, the dose knob tends move towards the nearest stable state (i.e., 0.5 units).



https://www.youtube.com/watch?v=4yTwnI0klRQ , Time: 1:49,
Last Accessed on September 23, 2022

**Indications for Use**

The InPen requires a prescription. It is a home-use reusable pen injector for single-patient use by people with diabetes under the supervision of an adult caregiver, or by a patient age 7 or older for the self-injection of a desired dose of insulin. The pen injector is compatible with Lilly Humalog® U-100 3.0 mL cartridges, Novo Nordisk Novolog® U-100 3.0 mL cartridges, and Novo Nordisk Fiasp® U-100 3.0 mL cartridges and single-use detachable and disposable pen needles (not included). The pen injector allows the user to dial the desired dose from 0.5 to 30 units in one-half (1/2) unit increments.

https://www.medtronicdiabetes.com/important-safety-information#smart-pen-system
Last Accessed on September 23, 2022

83.    Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '294 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement by others, such as Defendant's customers and end-users, in this District and elsewhere in the United States.  For example, Defendant's customers and end-users directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell,

selling, and/or importing into the United States products that include infringing technology, such as the Accused Products.  Defendant induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation.  Because of Defendant's inducement, Defendant's customers and end-users use the Accused Products in a way Defendant intends and they directly infringe the '294 Patent.  Defendant performs these affirmative acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '294 Patent, but while remaining willfully blind to the infringement.

84.    Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '294 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '294 Patent is directly infringed by others.  The accused components within the Accused Products are material to the invention of the '294 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '294 Patent.  Defendant performs these affirmative acts with knowledge of the '294 Patent and with intent, or willful blindness, that they cause the direct infringement of the '294 Patent.

85.     AIT is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '294 Patent.

86.     AIT has suffered damages as a result of Defendant's direct and indirect infringement of the '294 Patent in an amount to be proved at trial.

87.     AIT has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '294 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT V
### (Infringement of the '662 Patent)

88.     Paragraphs 1 through 26 are incorporated by reference as if fully set forth herein.

89.     AIT has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '662 Patent.

90.     Defendant infringes, contributes to the infringement of, and/or induces infringement of the '662 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '662 Patent including, but not limited to, at least the Accused Product.

91.     Defendant has directly infringed and continues to directly infringe the '662 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '662 Patent. Upon information and belief, the Accused Product practices the systems and/or methods covered by the '662 Patent.

92.     For example, Defendant has and continues to directly infringe at least claim 1 of the '662 Patent by making, using, offering to sell, selling, and/or importing into the United States

43

products which comprise an injection device comprising a housing containing a cartridge containing a medicament and a movable bung, wherein the housing comprises an inner thread, a piston rod for moving the bung during dose dispensing, the piston rod comprising an outer thread engaging the inner thread of the housing, and a bearing facing the bung and positioned at a distal end of the piston rod, wherein, in an unused delivery state of the device, the bearing abuts the bung, and a driver coupled to the piston rod for driving the piston rod during dose dispensing.

93.    The Accused Products comprise an injection device.  For example, the InPen is used to inject insulin.



Source: https://www.medtronicdiabetes.com/products/inpen-smart-insulin-pen-system, Page 1,
Last Accessed on Sept 26, 2022



https://www.youtube.com/watch?v=YciEuw_xyfw, Time Stamp – 0:14,
Last Accessed on Sept 26, 2022

94.    The Accused Products comprise an injection device which comprises a housing containing a cartridge containing a medicament and a movable bung, wherein the housing comprises an inner thread.  For example, the InPen contains a housing containing a cartridge of insulin, a movable bung, and the housing comprises an inner thread as shown below.



Source: https://www.medtronicdiabetes.com/products/inpen-smart-insulin-pen-system, Page 1,
Last Accessed on Sept 26, 2022



https://www.youtube.com/watch?v=fb0QFbcUxgc, Time Stamp – 0:27,
Last Accessed on Sept 26, 2022



https://www.medtronicdiabetes.com/sites/default/files/library/download-library/user-
guides/InPen-user-guide.pdf, Page 39,
Last Accessed on Sept 26, 2022

95.     The Accused Products comprise a piston rod for moving the bung during dose
dispensing, the piston rod comprising an outer thread engaging the inner thread of the housing and
a bearing facing the bung and positioned at a distal end of the piston rod, wherein, in an unused
delivery state of the device, the bearing abuts the bung.  For example, the In Pen comprises a piston
rod for moving the bung while dispensing insulin.  The piston rod has a thread arrangement within
the housing, and it contains a bearing at the end as shown below.  The outer thread on the piston
rod would engage with a thread present on the inside of the injection device during the injection
process.  The cartridge in the InPen comprises a bung, or a stopper located at one end of the

cartridge reservoir.  As the insulin is injected, the bung is pushed down towards the other end of the cartridge using a piston.  The distal end of the piston rod consists of a bearing that faces the bung and has a thread arrangement within the housing.  When the device is ready to use the bung and the bearings are already in contact with each other, the bung is pushed downwards during the injection process.



https://www.youtube.com/watch?v=4yTwnI0klRQ, Time Stamp: 1:25,
Last Accessed on Sept 26, 2022



Source: https://www.medtronicdiabetes.com/sites/default/files/library/download-library/user-
guides/InPen-user-guide.pdf, Page 47,
Last Accessed on Sept 26, 2022



https://www.youtube.com/watch?v=4yTwnI0klRQ, Time Stamp: 0:47,
Last Accessed on Sept 26, 2022

96.    The Accused Products comprise a driver coupled to the piston rod for driving the piston rod during dose dispensing.  For example, the InPen comprises a driver, i.e., the shaft below the dose knob (shown in the image below).  The rotation of the shaft drives the piston rod during the dose dispensing process.



https://www.youtube.com/watch?v=4yTwnI0klRQ, Time: 1:49,
Last Accessed on September 26, 2022



https://www.medtronicdiabetes.com/sites/default/files/library/download-library/user-guides/InPen-user-guide.pdf, Page 47,
Last Accessed on Sept 26, 2022

97.    Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '662 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement by others, such as Defendant's customers and end-users, in this District and elsewhere in the United States.   For example, Defendant's customers and end-users directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Accused Products.   Defendant induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation.   Because of Defendant's inducement, Defendant's customers and end-users use the Accused Products in a way Defendant intends and they directly infringe the '662 Patent.   Defendant performs these affirmative acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there

was a high probability that others, including end-users, infringe the '662 Patent, but while remaining willfully blind to the infringement.

98.     Defendant has indirectly infringed and continue to indirectly infringe one or more claims of the '662 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '662 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '662 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '662 Patent. Defendant performs these affirmative acts with knowledge of the '662 Patent and with intent, or willful blindness, that they cause the direct infringement of the '662 Patent.

99.     AIT is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '662 Patent.

100.    AIT has suffered damages as a result of Defendant's direct and indirect infringement of the '662 Patent in an amount to be proved at trial.

101.    AIT has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '662 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT VI
### (Infringement of the '376 Patent)

102.    Paragraphs 1 through 26 are incorporated by reference as if fully set forth herein.

103.    AIT has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '376 Patent.

104.    Defendant infringes, contributes to the infringement of, and/or induces infringement of the '376 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '376 Patent including, but not limited to, at least the Accused Products.

105.    Defendant has directly infringed and continues to directly infringe the '376 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '376 Patent.  Upon information and belief, the Accused Products practice the systems and/or methods covered by the '376 Patent.

106.    For example, Defendant has and continues to directly infringe at least claim 1 of the '376 Patent by making, using, offering to sell, selling, and/or importing into the United States products which comprise a dose controlled multi-shot injection device comprising a housing and a dose setting mechanism, wherein the dose setting mechanism includes a drive spring, a rotatable dose setting handle adapted to set a dose of medicament, thereby biasing the drive spring, and a ratchet mechanism for maintaining the drive spring in a biased state against a spring force at the set dose, wherein the ratchet mechanism includes a fixed ratchet element coupled to the housing and having circumferential teething, a movable flexible ratchet element provided with at least two teethed portions configured to engage the circumferential teething at least pairwise at any one of a plurality of engaging positions, which respectively represent the set dose, and a rotational element

52

coupled to the rotatable dose setting handle and configured to translate torque from the rotatable dose setting handle into a number of forces radially acting on the movable flexible ratchet element resulting in an elastic deformation of the movable flexible ratchet element, thereby releasing the engagement between the at least two teethed portions and the circumferential teething, wherein upon application of the torque onto the rotatable dose setting handle, cams rotate with respect to the movable flexible ratchet element, wherein the cams are configured to deflect a perimeter of the movable flexible ratchet element in a radial outward direction in a manner reducing a distance between the at least two teethed portions.

107.    The Accused Products comprise a dose controlled multi-shot injection device comprising a housing and a dose setting mechanism, wherein the dose setting mechanism includes a drive spring, a rotatable dose setting handle adapted to set a dose of medicament, thereby biasing the drive spring, and a ratchet mechanism for maintaining the drive spring in a biased state against a spring force at the set dose.  For example, the InPen is a reusable insulin pen.  It has a housing and dose setting mechanism, drive spring, and a ratable dose setting handle adapted to set the dose of insulin, which bias the spring.  The InPen also has a ratcheted mechanism for maintaining the drive spring in a biased state against the spring force at the set dose.  These are pictured below.



Teardown Images for the InPen



Teardown Images for the InPen



Teardown Images for the InPen

108.    The Accused Products comprise a ratchet mechanism wherein the ratchet mechanism includes a fixed ratchet element coupled to the housing and having circumferential teething.   For example, the InPen has a fixed ratchet element coupled to the housing with circumferential teething, as shown below.



Fixed ratchet element
(outer cylinder having
circumferential teething)

Tear down

109.    The Accused Products comprise a movable flexible ratchet element provided with at least two teethed portions configured to engage the circumferential teething at least pairwise at any one of a plurality of engaging positions, which respectively represent the set dose.  For example, the InPen has a movable flexible ratchet, which has the capability to contact the circumferential teeth in an engaged position.



Teardown Images for the InPen

110.    The Accused Products comprise a rotational element coupled to the rotatable dose setting handle and configured to translate torque from the rotatable dose setting handle into a number of forces radially acting on the movable flexible ratchet element resulting in an elastic deformation of the movable flexible ratchet element, thereby releasing the engagement between the at least two teethed portions and the circumferential teething.  For example, the InPen's dose

setting mechanism consists of a rotational element coupled to the rotatable dose setting handle and capable of translating torque from the dose setting handle into forces acting radially on the flexible ratchet element.



Teardown Images for the InPen

111.    The Accused Products comprise a rotational element, wherein upon application of the torque onto the rotatable dose setting handle, cams rotate with respect to the movable flexible ratchet element, wherein the cams are configured to deflect a perimeter of the movable flexible ratchet element in a radial outward direction in a manner reducing a distance between the at least two teethed portions.  For example, when torque is applied to the dose setting handle, the cams rotate in relation to the movable flexible element.  The cams rotate in a way that the perimeter of the flexible element gets deflected in a radially outward direction, thereby reducing the distance

between the teethed portions.





Teardown Images for the InPen



The cams deflect the perimeter of the movable ratchet element by reducing the distance between the teethed portion

Teardown Images for the InPen

112.    Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '376 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement by others, such as Defendant's customers and end-users, in this District and elsewhere in the United States.   For example, Defendant's customers and end-users directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Accused Products.  Defendant induces this direct infringement through their affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical

support, marketing, product manuals, advertisements, and online documentation. Because of Defendant's inducement, Defendant's customers and end-users use the Accused Products in a way Defendant intends and they directly infringe the '376 Patent. Defendant performs these affirmative acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '376 Patent, but while remaining willfully blind to the infringement.

113.    Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '376 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '376 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '376 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '376 Patent. Defendant performs these affirmative acts with knowledge of the '376 Patent and with intent, or willful blindness, that they cause the direct infringement of the '376 Patent.

114.    AIT is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '376 Patent.

115.    AIT has suffered damages as a result of Defendant's direct and indirect infringement of the '376 Patent in an amount to be proved at trial.

116.    AIT has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '376 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT VII
### (Infringement of the '150 Patent)

117.    Paragraphs 1 through 26 are incorporated by reference as if fully set forth herein.

118.    AIT has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '150 Patent.

119.    Defendant infringes, contributes to the infringement of, and/or induces infringement of the '150 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '150 Patent including, but not limited to, at least the Accused Products.

120.    Defendant has directly infringed and continues to directly infringe the '150 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '150 Patent.  Upon information and belief, the Accused Products practices the systems and/or methods covered by the '150 Patent.

121.    For example, Defendant has and continues to directly infringe at least claim 1 of the '150 Patent by making, using, offering to sell, selling, and/or importing into the United States products which comprise a biasing element configured for biasing a cartridge in a cartridge housing of a drug delivery device, said cartridge housing configured to be secured to a dose setting mechanism, wherein said cartridge comprises a bung at a first end of said cartridge and a pierceable seal at a second end of said cartridge; wherein the biasing element comprises a first connection side loop and a second connection side loop flexibly coupled to said first connection side loop,

wherein said first and second connection side loops are disposed at opposite ends of said biasing element and are flexible in a direction radial to a longitudinal axis of said cartridge housing such that at least one portion of said biasing element is configured to be self-retained by an internal surface of said drug delivery device, and wherein said biasing element resides in a compressed state when biasing said cartridge in said cartridge housing.

122.    The Accused Products comprises a biasing element configured for biasing a cartridge in a cartridge housing of a drug delivery device.  For example, the InPen is used to deliver insulin, via cartridge, and contains a biasing element configured to bias the cartridge as shown below.



https://www.medtronicdiabetes.com/sites/default/files/library/download-library/user-guides/InPen-user-guide.pdf, Page 38,
Last Accessed on March 29, 2023



Teardown Images for the InPen

123.    The Accused Products comprise said cartridge housing configured to be secured to a dose setting mechanism.  For example, the InPen comprises an InPen cap for covering a cartridge housing (wherein the insulin cartridge is housed), a dose setting mechanism comprising dose knob, dose window, etc.  The outer casing shown below along with the dose window (dose setting mechanism) comprises the dose sleeve which is used to indicate the dose being injected.



https://www.medtronicdiabetes.com/sites/default/files/library/download-library/user-guides/InPen-user-guide.pdf, Page 38,
Last Accessed on March 29, 2023



https://www.youtube.com/watch?v=M9EJIbczwmM, Time: 0:56,
Last Accessed on March 29, 2023, 2022

124.    The Accused Products comprise a cartridge, wherein said cartridge comprises a bung at a first end of said cartridge and a pierceable seal at a second end of said cartridge.  For example, the InPen comprises a cartridge housing wherein the cartridge is housed, the cartridge comprises a bung at one end of the cartridge and a pierceable seal at another end of the cartridge.



Source: https://www.youtube.com/watch?v=PsfFNXQaRqs, Time: 8:09,
Last Accessed on March 29, 2023



https://www.youtube.com/watch?v=iEyAqEhnfrw, Time 0:33,
Last Accessed on March 29, 2023

125.    The Accused Products comprise a biasing element, wherein the biasing element comprises a first connection side loop and a second connection side loop flexibly coupled to said first connection side loop.  For example, the InPen's biasing element is used for biasing a cartridge in a cartridge housing of a drug delivery device.  The biasing element comprises first and second connection loops at either ends of the biasing element.  The first and second connection loops are engaged in an internal surface of the drug delivery device.



Teardown Images for the InPen

126.    The Accused Products comprise first and second connection side loops, wherein said first and second connection side loops are disposed at opposite ends of said biasing element and are flexible in a direction radial to a longitudinal axis of said cartridge housing, such that at least one portion of said biasing element is configured to be self-etained by an internal surface of said drug delivery device.  For example, the InPen's first and second connection side loops are disposed at opposite ends of the biasing element.  The connection side loops are flexible and can be extended from the internal housing along a longitudinal axis along which it is twisted with respect to the dial sleeve and one portion of the biasing element can be self-etained in an internal surface of the drug delivery device.



Teardown Images for the InPen

127.    The Accused Products comprise a biasing element, wherein said biasing element resides in a compressed state when biasing said cartridge in said cartridge housing.  For example, when the InPen cartridge is placed inside the cartridge housing, it creates compression force on the basing element, which compress the spring of the biasing element.




Teardown Images for the InPen



https://www.youtube.com/watch?v=iEyAqEhnfrw, Time: 0:49,
Last Accessed on March 29, 2023

128.    Defendant has indirectly infringed and continues to indirectly infringe one or more

claims of the '150 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally

inducing infringement by others, such as Defendant's customers and end-users, in this District and

elsewhere in the United States.   For example, Defendant's customers and end-users directly

infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Accused Product.  Defendant induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation.  Because of Defendant's inducement, Defendant's customers and end-users use the Accused Products in a way Defendant intends and they directly infringe the '150 Patent.  Defendant performs these affirmative acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '150 Patent, but while remaining willfully blind to the infringement.

129.    Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '150 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Product in this District and elsewhere in the United States and causing the Accused Product to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Product, such that the '150 Patent is directly infringed by others.  The accused components within the Accused Product are material to the invention of the '150 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '150 Patent. Defendant performs these

affirmative acts with knowledge of the '150 Patent and with intent, or willful blindness, that they cause the direct infringement of the '150 Patent.

130.    AIT is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '150 Patent.

131.    AIT has suffered damages as a result of Defendant's direct and indirect infringement of the '150 Patent in an amount to be proved at trial.

132.    AIT has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '150 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, AIT prays for relief against Defendant as follows:

a.    Entry of judgment declaring that Defendant directly and/or indirectly infringe one or more claims of each of the Patents-in-Suit;

b.    Entry of judgment declaring that Defendant's infringement of the Patents-in-Suit is willful;

c.    An order awarding damages sufficient to compensate Plaintiff for Defendant's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, including supplemental damages post-verdict, together with pre-judgment and post-judgment interest and costs;

d.    Enhanced damages pursuant to 35 U.S.C. § 284;

e.    Entry of judgment declaring that this case is exceptional and awarding Plaintiff its costs and reasonable attorney fees pursuant to 35 U.S.C. § 285;

f.    An accounting for acts of infringement;

g.    Such other equitable relief which may be requested and to which the Plaintiff is entitled; and

h.    Such other and further relief as the Court deems just and proper.


Dated:  April 9, 2025                           Respectfully submitted,

                                                 /s/ *Vincent J. Rubino, III*
                                                Vincent J. Rubino, III
                                                NY Bar No. 4557435
                                                Email:  vrubino@fabricantllp.com
                                                Peter Lambrianakos
                                                NY Bar No. 2894392
                                                Email: plambrianakos@fabricantllp.com
                                                **FABRICANT LLP**
                                                411 Theodore Fremd Avenue,
                                                Suite 206 South
                                                Rye, New York 10580
                                                Telephone: (212) 257-5797
                                                Facsimile: (212) 257-5796

                                                ***ATTORNEYS FOR PLAINTIFF***
                                                ***AUTO INJECTION TECHNOLOGIES LLC***